IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 8223 |
| | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | |
| THOMAS DART, SHERIFF OF COOK COUNTY, and COOK COUNTY, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff sues defendants pursuant to 42 U.S.C. § 1983 for their alleged violations of his Fourth and Fourteenth Amendment rights. Defendants have filed a Federal Rule of Civil Procedure ("Rule") 56 motion for summary judgment. For the reasons set forth below, the Court grants the motion.

**Facts**

From August 31, 2011 until October 21, 2013, plaintiff was detained at Cook County Jail ("Jail") on charges of home invasion and criminal sexual assault. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 58, 60.) On October 21, 2013, plaintiff was tried on and acquitted of those charges. (*Id.* ¶ 61.) After his acquittal, plaintiff was taken back to the Jail, where he waited for about seven hours for his discharge paperwork to be processed. (*Id.* ¶¶ 62-65.) Plaintiff alleges that the delay between his acquittal and discharge violated his constitutional rights and was the result of the Sheriff's practice and policies. Plaintiff sues the Sheriff in both his individual and his official capacities and the County because it is required to pay any judgment that is rendered against the Sheriff in his official capacity. (*Id.* ¶ 2.)

**Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

Plaintiff's § 1983 official capacity claims against Dart are, in essence, claims against the County. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.") (quotation omitted). Thus, they are governed by *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), which requires plaintiff to prove that he suffered a constitutional deprivation and that the deprivation was caused by one of Dart's policies or practices. *Id.* at 694.

The first task, then, is to identify the constitutional right of which plaintiff was allegedly deprived, a task complicated by both the law and the facts of this case. On the legal front, different Amendments apply to detention at different times in the criminal process. The Fourth Amendment applies to detention from arrest to arraignment, the Fourteenth Amendment applies to detention from arraignment through sentencing, and the Eighth Amendment applies to detention after sentencing. *See Llovet v. City of Chi.*, 761 F.3d 759, 763 (7th Cir. 2014) ("[O]nce detention by reason of arrest turns into detention by reason of arraignment – once police action gives way to legal process – the Fourth Amendment falls out of the picture and the detainee's claim that the detention is improper

2

becomes a claim of malicious prosecution violative of due process."), *cert. denied*, 135 S. Ct. 1185 (2015); *Anderson v. Gutschenritter*, 836 F.2d 346, 348 (7th Cir. 1988) ("The Eighth Amendment right to be free from cruel and unusual punishment is applicable only to those criminals who are serving a sentence."). However, the detention of which plaintiff complains, detention after acquittal, does not fit neatly into any of these categories.

Because plaintiff was continuously in Dart's custody from arraignment through acquittal, it is tempting to say that the Fourteenth Amendment applies. But after he was acquitted, plaintiff was no longer in custody pursuant to legal process, the touchstone of Fourteenth Amendment protection. *See* 730 Ill. Comp. Stat. 125/4 (stating that Dart "shall receive and confine in such jail, *until discharged by due course of law*, all persons committed to such jail by any competent authority") (emphasis added); (Defs.' LR 56.1(a) Stmt., Ex. F-1 at Smith 063, Mittimus, *People v. Smith*, No. 11 C 1636401 (Cir. Ct. Cook Cnty. Oct. 21, 2013) (stating that plaintiff was "Discharged As To This Case Only ")); *see also Llovet*, 761 F.3d at 763. Thus, it is possible to view plaintiff's post-acquittal return to Dart's custody as a second seizure, which would bring the Fourth Amendment back into play.

Any such seizure was unconstitutional, however, only if it was unreasonable. *See Carter v. Buscher,* 973 F.2d 1328, 1332 (7th Cir. 1992). With respect to post-arrest detention, the Supreme Court has held that a period of no more than forty-eight hours between arrest and a probable cause determination is generally reasonable. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). The Court noted, however, that not every such detention will pass "constitutional muster":

> [A] hearing [within forty-eight hours] may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose

3

of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities.

*Id.* at 56-57; *see Chortek v. City of Milwaukee*, 356 F.3d 740, 746-47 (7th Cir. 2004) (applying *McLaughlin* to detentions for completion of processing). Ultimately, "the constitutionality of [any] detention depends on whether the length of the delay between the time the Sheriff was notified that [the detainee should be released] and the time that the detainee was released was reasonable." *Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 515 (7th Cir. 2009).

Dart says the record establishes that the delay in releasing plaintiff was both reasonable and the inevitable result of administering the large Jail complex in a way that ensures that only the appropriate detainees are, in fact, released. The Court agrees. It is undisputed that: (1) the Jail is the "largest, single-site correctional facility in the country," which houses about 9,000 detainees; (2) the Jail transports about 1,000 detainees to and from seventeen different court locations each weekday; (3) on October 21, 2013, the date of plaintiff's acquittal, the Jail transported 919 detainees to and from various courthouses; (4) detainees generally return from court in the afternoon and are processed back into the Jail at the same time and in the same area as newly-admitted detainees and detainees being transferred between housing divisions in the Jail; (5) each detainee returns from court with a mittimus, *i.e.*, a form showing what happened in court, which has to be checked by Jail personnel to determine if discharge is warranted; (6) if the mittimus suggests the inmate falls into one of eleven categories of detainees eligible for discharge, personnel in the Jail's records division

organize the detainee's file, check the Jail, State Police, and City/County databases to determine whether there are any other cases against or holds on the detainee that would prevent his discharge, and if not, ask the relevant housing division to transport the detainee to the processing center; (7) the detainee's file is then reviewed page by page by an auditor, a records supervisor, and a supervisor in the discharge unit, a process that takes from ten to sixty minutes depending on the length of the detainee's stay at the Jail, each of whom confirms that the detainee is eligible for discharge; (8) once a group of detainees is ready to be discharged, they are brought to the Division 5 interlock, where an officer matches their release forms to their identification cards, and they are discharged; and (9) the process of releasing detainees from the Jail occurs twenty-four hours a day, seven days a week, and as many as twenty-eight employees are assigned to process releases on each shift. (*See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 14-15, 17, 20-22, 25-26, 28-29, 31-32, 34, 37-38, 41, 43-57, 66.) Plaintiff offers no evidence that suggests these steps were not the real reason for the delay in his release or that the delay was "motivated by ill will" or was simply "delay for delay's sake." *McLaughlin*, 500 U.S. at 56. Absent such evidence, plaintiff has not created a triable fact issue as to whether his post-acquittal detention violated the Fourth Amendment. *See Chortek*, 356 F.3d at 746, 748 (affirming summary judgment for defendants, who submitted evidence explaining the 3- to 14 1/2-hour detentions of plaintiffs, because plaintiffs did not offer "any evidence of improper purpose for the delay"); *cf. Ray v. City of Chi.*, 629 F.3d 660 (7th Cir. 2011) (granting motion to dismiss Fourth Amendment claim based on post-arrest detention because plaintiff had "not alleged that the length of her detention exceeded [the] time frame [in *Chortek*] or that it was the result of illicit motives").

If plaintiff's post-acquittal return to custody was not a seizure, the propriety of his detention would be determined under the due process clause. Defendants contend that any procedural due

process claim is foreclosed by *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by*, *Daniel v. Williams*, 474 U.S. 327 (1986), and its progeny, which hold that the government's intentional deprivation of liberty or property without a pre-deprivation hearing does not violate due process if there are adequate state post-deprivation remedies. *See id.* at 543-44 (random and unauthorized deprivation of property); *Hudson v. Palmer*, 468 U.S. 517, 534 (1984) (intentional deprivation of property); *Hood v. City of Chi.*, 927 F.2d 312, 314 (7th Cir. 1991) (intentional deprivation of liberty). Unlike in those cases, however, here plaintiff is not complaining that state actors deviated, through inadvertence or design, from a permissible state procedure. Rather, he attacks the procedure itself as unconstitutional, which is an actionable due process claim. *See Daniels*, 474 U.S. at 339-40 (1986) (Stevens J., concurring) ("[A] complaint does not state a valid procedural due process objection – and a valid 1983 claim – if it does not include a challenge to the fundamental fairness of the State's procedures."); *Hamlin v. Vaudenberg*, 95 F.3d 580, 583 (7th Cir. 1996) (noting that plaintiff's complaint would state a viable § 1983 claim if it alleged that "the Wisconsin procedures themselves are unconstitutional"). Thus, plaintiff's procedural due process claim is not barred by the *Parratt* line of cases.

Defendants do not dispute that plaintiff was deprived of a liberty interest when he was taken back to jail after his acquittal. The question is: What process was plaintiff due? To answer that question, the Court must balance three factors:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

6

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see Stauch v. City of Columbia Heights*, 212 F.3d 425, 431 (8th Cir. 2000) (stating that "whether the procedural safeguards provided . . . are adequate to satisfy due process is a question of law for the court to determine").

The decision to maintain custody of plaintiff until his discharge paperwork was completed deprived him of about seven hours of liberty, a small but not insignificant deprivation. It is not clear how big the risk is of an erroneous deprivation, *i.e.*, that a person acquitted of all charges and subject to no others will spend post-acquittal hours in the Jail, because the parties offer no evidence on the point. But there must be some degree of risk, as it is undisputed that all detainees are returned to the Jail after court, regardless of the result of the proceedings. (*See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 31.) However, defendants have a compelling interest in ensuring that only appropriate detainees are released, and it is not clear that any additional or different procedures would reduce or eliminate post-acquittal deprivations of liberty while protecting that interest. Given the relatively brief deprivation of freedom that plaintiff suffered, Dart's compelling interest in ensuring that only appropriate individuals are released, the complex and fiscally-constrained environment in which Dart operates, and the existence of a state-law post-deprivation remedy, *i.e.*, a claim for false imprisonment, the Court concludes that Dart did not violate plaintiff's procedural due process rights.

If the legality of plaintiff's detention is not measured by the Fourth Amendment or by procedural due process, it must comport with substantive due process. "The guarantee of [substantive] due process serves to protect the individual against arbitrary action of government." *Schaefer v. Goch*, 153 F.3d 793, 797 (7th Cir. 1998) (quotations omitted). "Official misconduct . . . rise[s] to the level of a constitutional violation only if it shocks the conscience," *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010); that is, if it evidences deliberate indifference to the detainee's

7

rights, *Armstrong v. Squadrito*, 152 F.3d 564, 576 (7th Cir. 1998). For the reasons discussed above, there is no evidence that suggests Dart was deliberately indifferent to plaintiff's rights. Thus, he is entitled to summary judgment on any substantive due process claim.

In sum, plaintiff has not created a genuine issue of material fact as to whether Dart deprived him of his Fourth or Fourteenth Amendment rights by detaining him pending discharge processing after he was acquitted. Accordingly, defendants are entitled to judgment as a matter of law on plaintiff's claims.

## **Conclusion**

For the reasons set forth above, the Court grants defendants' motion for summary judgment [37] and terminates this case. Civil case terminated

**SO ORDERED.**                   **ENTERED: April 13, 2015**

_____
**HON. JORGE L. ALONSO**
**United States District Judge**